**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **JOSEPH CRUSSIAH,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 12-2307** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.**[1] | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Joseph Crussiah ("Plaintiff") seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 20), Defendant's Motion for Summary Judgment (ECF No. 29), and Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 33).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

hearing is necessary.  L.R. 105.6.  For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 29) is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

## I

## Background

Plaintiff was born in 1970, has a college education, and previously worked as a visa consultant.  R. at 76, 97, 120.  Plaintiff applied for DIB on October 30, 2008, alleging disability beginning on February 2, 1999, due to migraines and an intranasal injury.  R. at 17, 76-77, 110. The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 47-57.  On September 20, 2010, ALJ Larry K. Banks held a hearing in Washington, D.C., at which Plaintiff *pro se* and a vocational expert ("VE") testified.  R. at 23-46.  On October 7, 2010, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of February 2, 1999, through the date last insured ("DLI") of December 31, 2004.  R. at 14-22.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on June 4, 2012.  R. at 1-4, 12.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On August 4, 2012, represented by counsel, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  On June 7, 2013, the Court granted Plaintiff's counsel's motion to withdraw.  The Commissioner filed the administrative transcript (ECF No. 15), and the parties filed their respective Motions for Summary Judgment (ECF Nos. 20, 29).  On October 25, 2013, the Clerk of Court notified

2

Plaintiff that he had seventeen days to file a response to Defendant's Motion for Summary Judgment and that failure to file a timely written response could lead to dismissal of the case or to entry of judgment against him without further notice (ECF No. 30). On November 8, 2013, Plaintiff filed a Response to Defendant's Motion for Summary Judgment (ECF No. 33). The case subsequently was reassigned to the undersigned. The matter is now fully submitted.

## II

### Summary of Evidence

**A.   Johns Hopkins Medicine (Nasir Bhatti, M.D.; John Carey, M.D.)**

On November 30, 2000, Plaintiff visited Dr. Bhatti, an otolaryngologist, reporting

> fullness and numbness above the left eye and temple for the last two years. This is continuous but has superimposing exacerbations of the symptoms. He also has fullness in the left ear with occasional loss of balance. He denies any vomiting but has occasional nausea with the problem. He also has ocular muscle fasciculations with this which are subjective but he cannot see them in the mirror. He denies any postnasal drip or nasal congestion. He has seen many otolaryngologists, allergists, neurologists and oral surgeons including temporomandibular joint specialists. He had a skin test done which showed allergies to significant number of materials. According to [Plaintiff], if he is driving and suddenly turns his neck, he hears a popping sensation in the ear and the symptoms start. He has had an audiogram done which has been reportedly normal. He has had no CT scan of his sinuses but has had an MRI without gadolinium which showed minimal ethmoid disease.

R. at 156. "There are no positive findings in the skin, respiratory, neurologic, cardiac, endocrine, genitourinary, psychiatric and musculoskeletal systems." R. at 156. Examination of Plaintiff's nose "revealed minimal mucoid material from the sinuses. The nasopharynx was clear." R. at 157. Dr. Bhatti's assessment was that Plaintiff "has a left-sided atypical facial pain which has features of migrainous variant as well as Meniere's disease. He has had an MRI scan which was unremarkable but was without gadolinium enhancement." R. at 157. Dr. Bhatti planned to obtain a CT scan of Plaintiff's sinuses "to rule out sinus disease as the triggering factor." R. at

157.  Plaintiff "has also been placed on Ceftin and nasal steroid spray as well as nasal saline spray which he will use for two weeks before getting the CT scan of the sinuses."  R. at 157.  "If the CT scan does not show any significant sinus disease, I will ask Dr. John Carey for his input as to the possibility of a Meniere's type etiology."  R. at 157.

On January 11, 2001, Dr. Bhatti noted that Plaintiff had "used Ceftin for two weeks.  He felt significant improvement after a couple of days of starting the antibiotic course.  He then finished the course and remained symptom free for another week.  After that, the symptoms have returned."  R. at 155.

On April 12, 2001, Dr. Bhatti noted that Plaintiff "had a CT scan of his sinuses which showed minimal mucosal thickening in the left sphenoid sinus and a small concha bullosa on the left side.  The other sinuses appeared clear on my examination."  R. at 154; *see* R. 158-59 (CT scan dated January 31, 2001).

On April 25, 2001, Plaintiff visited Dr. Carey in the otology section.  R. at 152.  Dr. Carey noted the following:

> [Plaintiff's] chief complaint is a sensation of numbness in the left half of the face.  The [sic] covers essentially the distribution of the second division of the trigeminal nerve, particularly around the nose and under the eye.  He also has some occasional pain in the left eye.  This sensation extends over to the left ear and he complains also of fullness in the left ear.
>
> His symptoms are essentially constant.  Oddly, he finds that they only go away when he has a cold or a sore throat.
>
> He was previously evaluated by a neurologist who told him that the MRI scan and EEG studies were unrevealing and that he thought that his symptoms were most likely due to migraine.  He placed him on Elavil but the patient reports he stopped this after two days because he did not tolerate the medication well.
>
> . . . .

> [Plaintiff] was evaluated and treated for possible left temporomandibular joints dysfunction.  He wore a bite guard at night for four months but noted no change in symptoms.

R. at 152.  Dr. Carey provided the following assessment:

> [Plaintiff] has a history of facial paresthesias and dysequilibrium without objective vertigo and without any changes in his hearing or aural fullness or tenderness.  I think the most likely explanation of his symptoms is indeed migraine.  When I questioned him further, he reported that he has a past history of pain centered around the left eye that would often be brought on by exertion and accompanied by nausea.

> I advised him to return to Dr. Syme, his neurologist in Greenbelt, and discuss use of another agent to treat his migraine.

R. at 153.

**B.      The Neurology Center (Brian Avin, M.D.)**

On January 29, 2003, Dr. Avin, a neurologist, evaluated Plaintiff who complained of

> sensory distortion on the left side of his face.  In 1996 he was treated for the flu with two courses of antibiotics and soon thereafter became aware of mild discomfort about his left eye, and sensory distortion about the left side of his cheek and jaw.  These symptoms persist and at times may be associated with lightheadedness.  He previously was evaluated with an MRI scan of the head that was normal.  A CAT scan of his sinuses was normal.  He was evaluated by three ENT physicians and one neurologist.  The sensory distortion seems to improve when he gets a sore throat.  He was treated with Elavil that was poorly tolerated.  An EEG and EMG were normal.  He does not complain of headaches, change in his hearing, vision, smell or taste, dysarthria, dysphagia or symptoms referable to the right or left sides of his body.  Excedrin may be helpful in minimizing his symptoms.  There is no history of high blood pressure, diabetes, heart disease, allergies to medication, asthma or ulcers.  He has extrinsic allergies.  He does not smoke or drink.

R. at 161.  According to Dr. Avin, the neurologic examination of Plaintiff was normal.  R. at

162.

**C.      Capitol Neurology, L.L.C. (Rakesh Jaitly, M.D.)**

Plaintiff visited Dr. Jaitly in an apparent follow-up examination on March 26, 2003.  R. at

166.  Dr. Jaitly noted that

[Plaintiff] reported that he started on Inderal 10 mg bid and has had improvement in his condition.  However, later on he started experiencing headaches, but has not had any nausea.  He denied any side effects from Inderal except for some cold sensitivity in his left lower molar.  The patient ran out of Inderal last week and reported some recurrence of the symptoms.

. . . No focal cranial nerve or motor deficits were identified.

We discussed treatment for possible migraine headaches in detail and the need for continued medication.  At present I restarted him on Inderal 10 mg bid which will be increased to 20 mg bid.  He was advised to keep a diary/calendar of his symptoms and follow up with me in one month.

R. at 166.

On May 14, 2003, Dr. Jaitly noted that

[Plaintiff] reported that he re-started Inderal.  This time he did not feel any sensitivity in his lower jaw but he did feel some pulsating sensations in his left face and paresthesia.  He felt some improvement in his eye pain.  The patient increased the dose of Inderal but got worse[;] therefore he split the dose to 1 tablet 4 times a day, but the sensations on his face persisted.  At times the sensations were worse in the first 3 hours that he took the medication.

His examination revealed that he was awake, alert, and oriented times three.  No gross focal motor or sensory deficits were identified.

We discussed his treatment options and a possible diagnosis of atypical facial pain.  We also discussed the side effect and toxic effect profile of other medications, including Tegretol, in detail.  At present, the patient is to discontinue use of Inderal and initiate treatment with Tegretol 100 mg tid.  He is to monitor his symptoms for a month then follow up with me.

R. at 165.

On June 11, 2003, Dr. Jaitly noted that

[Plaintiff] reported that with the use of Tegretol he has had some decline in the twitching sensation in his left eye, but the feelings of sleepiness have increased on the left side of his face and his headaches have reappeared.  He also reported excessive somnolence with Tegretol which is a significant problem for him.

His examination did not reveal any focal motor or sensory deficits.  No cerebellar deficits were identified.

6

> I had a long discussion with [Plaintiff] regarding various other treatment options. . . . At present, he believes that he has the best benefit with Inderal 10 mg bid[;] therefore he is being restarted on Inderal 10 mg bid and was advised to discontinue the use of Tegretol.  I strongly advised him to seek a primary care physician to evaluate for primary medical conditions.  I also advised him to undergo neuropsychological testing . . . .

R. at 164.

## D.     State Agency Medical Consultant

On February 4, 2009, S.K. Najar, M.D., a state agency medical consultant, found insufficient evidence to adjudicate properly Plaintiff's claim.  R. at 167.

## E.     Neurological Medicine, P.A. (Syed Wahaj Asad, M.D.)

A CT scan on August 31, 2009, of Plaintiff's brain revealed "possible calcification of the vertebral arteries" and "a probable prominent cerebral fold on the left."  R. at 175.

On March 15, 2010, Dr. Asad noted Plaintiff's "numerous physical complaints such as headaches, burning sensation, and also sensitivity to light in his skin."  R. at 177.  Dr. Asad "told [Plaintiff] that his symptoms are very nonspecific with normal neurological examination."  R. at 177.

## F.     Plaintiff's Testimony

According to Plaintiff, he suffered a nasal injury from a physician obtaining a nasal culture on April 15, 1996, but continued to work until February 1999, when he began suffering from daily migraines after 12:00 p.m.  R. at 32-33, 37.  Reading or scanning with his eyes would trigger pain in his eye.  R. at 37-38.  In November 1999, he visited Dr. Syme, a neurologist, who ordered an MRI that ultimately revealed sinusitis of the ethmoids.  R. at 38.  Dr. Jaitly diagnosed Plaintiff with migraine in 2003, at which point Plaintiff's symptoms changed, and his numbness began to originate from his left ear.  R. at 39.  Activities such as bathing and brushing his teeth began to take longer for him to complete.  R. at 39-40.

**G.     VE's Testimony**

The VE classified Plaintiff's past work as a visa consultant as skilled and either sedentary[3] or light.[4]  R. at 43.  A hypothetical person of Plaintiff's same age, education, and work experience who could perform work at all exertional levels but "should avoid work around dangerous machinery or protected [sic] heights" and be limited "to performing unskilled tasks, low complex tasks" could not perform Plaintiff's past work.  R. at 43-44.  Such a hypothetical person further limited to unskilled, light work with no climbing of ropes, ladders, or scaffolds could work as a packer or bench worker, however.  R. at 44-45.  Such a person could not perform any work if that person "could function from nine to 12 [o'clock] but after 12 o'clock he would suffer severe migraine headaches that would simply incapacitate him . . . up until 10 o'clock in the evening."  R. at 45.

**III**

**Summary of ALJ's Decision**

On October 7, 2010, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity from the alleged onset date of disability of February 2, 1999, to December 31, 2004; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work;

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

but (5) could perform other work in the national economy. R. at 19-22. The ALJ accordingly found that he was not disabled from February 2, 1999, through the DLI of December 31, 2004. R. at 22.

> In so finding, the ALJ found that
>
> [Plaintiff's] otolaryngological impairment does not meet the definitional criteria for any listing. [Plaintiff's] migraine headaches have been considered under Memo to [an] ALJ by Susan M. Daniels, Ph.D., Deputy Commissioner for Disability and Income Security Programs, dated May 11, 1998. In this case, the primary symptoms were a sense of "fullness" in the left ear and some facial symptoms. The undersigned is not persuaded that the symptoms in this case fall within the ambit of the symptomatology envisioned in Ms. Daniels' memo or in the Social Security Rulings to which that memo referred.

R. at 19-20.

> The ALJ further found that, through the DLI, Plaintiff had the RFC
>
> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] could not climb ladders, ropes or scaffolds, could not work around dangerous machinery or unprotected heights, and is limited to unskilled tasks due to pain and the side effects of medication.

R. at 20.

Moreover, regarding Plaintiff's credibility, the ALJ found that his "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible as they pertain to the period prior to his [DLI]." R. at 21. In this regard, the ALJ stated in his decision:

> [Plaintiff] alleges severe restrictions in activities of daily living (such as taking extra time to bathe or shave). He alleges he gets sleepy easily and that tasks around the house go undone because of fatigue. He also alleges limitations in memory and concentration.
>
> The record documents pain symptoms prior to the [DLI]. The record also documents side effects of medication. These limitations are accounted for in the [ALJ's RFC assessment] restricting [Plaintiff] to unskilled work. The record

documents some problems with imbalance.  These symptoms are accounted for in the [ALJ's RFC] assessment which restricts climbing, exposure to dangerous machinery, or unprotected heights.

Overall, however, medical records prior to [Plaintiff's DLI] show minimal symptoms and some puzzlement by caregivers as to what was wrong.  Although a full-body MRI revealed abnormalities of the brain, this was too recent to [relate] back to the disputed period prior to [Plaintiff's DLI].  Shortly prior to the [DLI] (in January 2003), a neurological study was normal.

R. at 20-21 (citations omitted).

# IV

## <u>Disability Determinations and Burden of Proof</u>

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production

10

and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4),

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.   *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.   *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**V**

**Standard of Review**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

## <u>Discussion</u>

Plaintiff maintains that he suffered a "mild traumatic brain injury on April 15, 1996," as a result of a physician's nasal culture and that his symptoms subsequently became severe, causing him to be unable to work an eight-hour workday.  Pl.'s Mem. Supp. Mot. Summ. J. 1, ECF No. 20-1.  He asserts that the ALJ erred in determining that his impairment neither met nor equaled an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  *Id.* at 4, 9.  Plaintiff further contends that the ALJ erred in assessing his RFC and seeks the Court's review of new evidence attached to his Motion for Summary Judgment.

**A.      ALJ's Step Three Determination**

At step two of the five-step sequential evaluation process, the ALJ found that, through the DLI, Plaintiff's otolaryngological impairment was severe.  R. at 19.  The ALJ found that this impairment "has been described as Meniere's disease or, alternatively, the otolaryngological symptoms are thought to be part of a migraine syndrome."  R. at 19.  At step three, the ALJ found that Plaintiff's "otolaryngological impairment does not meet the definitional criteria for any listing."  R. at 19.  According to Plaintiff, however, his impairment meets or equals Listings 2.07, 11.03, and 11.18 found in 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 2.07, 11.03, and 11.18. Pl.'s Mem. Supp. Mot. Summ. J. 4, 9, ECF No. 20-1.  Defendant maintains that "[t]here was no reason for the ALJ to address these listings because there was inadequate evidence that Plaintiff met all of the requirements of those listings."  Def.'s Mem. Supp. Mot. Summ. J. 11, ECF No. 29-1.

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.'  A

claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'"  *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.  "In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met."  *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).  However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments."  *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999).  "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment."  *Id.*

Listing 2.07 requires the following:

*Disturbance of labyrinthine-vestibular function (including Ménière's disease)*, characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing.  With both A and B:

A. Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and

B. Hearing loss established by audiometry.

20 C.F.R. pt. 404, subpt. P, app. 1, § 2.07.  The Commissioner correctly points out that there is no evidence of hearing loss or balance disturbance established by testing.  The ALJ accordingly "was not required to compare the medical evidence of record to the criteria of this Listing."  *Huntington*, 101 F. Supp. 2d at 392 (citing *Cook*, 783 F.2d at 1168).

Moreover, Listing 11.03 requires the following:

> *Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.03. The Commissioner again correctly points out that there is no evidence to support consideration of this listing, and so the ALJ was not required to compare the record evidence to the criteria of Listing 11.03.

In addition, Listing 11.18, which relates to cerebral trauma, directs the Commissioner to "[e]valuate [the impairment] under the provisions of 11.02 [convulsive epilepsy], 11.03, 11.04 [central nervous system vascular accident] and 12.02 [organic mental disorders], as applicable." 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.18. In this case, the ALJ properly did not consider Listing 11.18 because of the lack of evidence of cerebral trauma. Plaintiff asserts, however, that evidence of a "brain injury via left nasal cavity" can be found in the January 31, 2001, CT scan of his paranasal sinuses that indicated "obliteration of the oteomeatal complex on the left side." Pl.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 20-1 (citing R. at 158). Dr. Bhatti's treatment note on April 12, 2001, that mentions this CT scan, however, only remarked about "minimal mucosal thickening in the left sphenoid sinus and a small concha bullosa on the left side" (R. at 154), suggesting a lack of significance of such an "obliteration." Further, the ALJ noted in his decision that a neurological study in January 2003 before the DLI was normal. R. at 21 (citing R. at 160-62). The ALJ thus was not required to compare the record evidence to the criteria of Listing 11.18.

In finding that Plaintiff's migraine headaches did not meet or medically equal a listed impairment, the ALJ also referred to a May 11, 1998, memorandum from the Deputy

Commissioner for Disability and Income Security Programs to an ALJ (R. at 19-20) that states that "some symptoms, when appropriately reported by a physician or psychologist in a clinical setting, can also be considered 'signs' because sometimes these observations constitute 'medically acceptable clinical diagnostic techniques.'  This is true for mental impairments in general and for such widely accepted and recognizable disorders as migraine headaches." Memorandum from Susan M. Daniels, Ph.D., Deputy Comm'r for Disability and Income Sec. Programs, Soc. Sec. Admin., to Verrell L. Dethloff, ALJ, Soc. Sec. Admin. (May 11, 1998), *available at* http://www.fibroassist.net/SSA_FM.htm; *see* 20 C.F.R. § 404.1528(b) ("Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms).  Signs must be shown by medically acceptable clinical diagnostic techniques.").   The Court finds that substantial evidence supports the ALJ's finding that Plaintiff's "primary symptoms were a sense of 'fullness' in the left ear and some facial symptoms" and that these symptoms did not "fall within the ambit of the symptomatology envisioned in Ms. Daniels' memo."  R. at 20; *see* R. at 152, 154-56.  In short, substantial evidence supports the ALJ's determination that Plaintiff's otolaryngological impairment neither met nor equaled a listed impairment through Plaintiff's DLI.

**B.      ALJ's RFC Determination**

Plaintiff next maintains that the ALJ erred in assessing his physical RFC by relying solely on medical evidence in ascertaining his limitations, ignoring symptoms that he reported to his physicians, improperly relying on tests revealing no remarkable findings, and erroneously evaluating his credibility.  Pl.'s Mem. Supp. Mot. Summ. J. 12-26, ECF No. 20-1.  Plaintiff further contends that the ALJ should have ordered a consultative mental examination in order to

assist the ALJ in assessing his RFC and to fulfill the ALJ's duty to develop the record regarding his mental impairments. *Id.* at 25-26.

Although Plaintiff contends that the ALJ relied solely on medical evidence in determining his physical RFC, the Commissioner correctly points out that the ALJ considered all of the evidence in the record in determining Plaintiff's RFC. The ALJ discussed Plaintiff's allegations regarding his limitations, including his allegations of limitations in memory and concentration and severe restrictions in his activities of daily living. R. at 20. The ALJ accounted for Plaintiff's pain, imbalance, and medication side effects in the RFC assessment. R. at 20. The ALJ also noted that medical records before Plaintiff's DLI demonstrated minimal symptoms and a normal neurological study. R. at 21.

In considering the medical evidence of record, the ALJ noted that, "[a]lthough a full-body MRI revealed abnormalities of the brain, this was too recent to [relate] back to the disputed period prior to [Plaintiff's DLI]." R. at 21 (citing R. at 175). Plaintiff contends that the ALJ improperly rejected this "evidence of brain injury," citing *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012). Pl.'s Mem. Supp. Mot. Summ. J. 9-11, ECF No. 20-1.

In *Bird*, the claimant argued that the ALJ erred in failing to consider retrospectively evidence created after the last date of his insurance coverage. *Bird*, 699 F.3d at 338-39, 340. The court held that the ALJ was required to give retrospective consideration to evidence after the claimant's DLI because the evidence placed the claimant's "symptoms in the context of his work and social histories, drawing a link between his current condition and his condition predating his DLI." *Id.* at 342. The court explained that "[m]edical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." *Id.* at 340. "[P]ost-DLI medical evidence

generally is admissible in an SSA disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-DLI condition." *Id.* at 341. "[R]etrospective consideration of evidence is appropriate when the record is not so persuasive as to rule out any linkage of the final condition of the claimant with his earlier symptoms." *Id.* (internal quotation marks omitted).

Here, the ALJ considered Plaintiff's August 2009 CT scan showing a possible cerebral fold, but found that it was too recent to relate back to the period before Plaintiff's DLI. R. at 21 (citing R. at 175). The ALJ noted that, before the DLI, a neurological examination in January 2003 was normal. R. at 21 (citing R. at 160-62). Further, Dr. Asad noted in March 2010 a normal neurological examination. R. at 177. Unlike in *Bird*, the results of the August 2009 CT scan did not summarize Plaintiff's symptoms, impairments, and their impact with regard to the period antedating his DLI. *Cf. Bird*, 699 F.3d at 341-42. Because the post-DLI medical evidence of Plaintiff's August 2009 CT scan fails to imply any linkage with Plaintiff's pre-DLI condition, the ALJ did not err in his consideration of this evidence.

Plaintiff also contends that the ALJ erred in evaluating his credibility. Pl.'s Mem. Supp. Mot. Summ. J. 13, 16-18, ECF No. 20-1. The ALJ considered all of Plaintiff's symptoms, however, and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. R. at 20. The ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to cause his alleged symptoms, but found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms relating to the period before his DLI were not fully credible. R. at 21. In limiting Plaintiff's RFC to unskilled work, the ALJ considered Plaintiff's complaints of facial pain and medication side effects. R. at 20 (citing R. at 164-65). In excluding climbing,

dangerous machinery, and unprotected heights from Plaintiff's RFC, the ALJ considered Plaintiff's occasional loss of balance.  R. at 20 (citing R. at 156).  Substantial evidence supports the ALJ 's determination that "[o]verall, however, medical records prior to [Plaintiff's DLI] show minimal symptoms and some puzzlement by caregivers as to what was wrong," as Plaintiff's examinations before his DLI were normal.  R. at 152-53, 155-57, 161-62, 176-77.

Plaintiff further argues that the ALJ should have ordered a consultative mental examination.  Pl.'s Mem. Supp. Mot. Summ. J. 25-26, ECF No. 20-1.  "[I]n pro se cases, Administrative Law Judges have a duty to assume a more active role in helping claimants develop the record."  *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *see Craig*, 76 F.3d at 591; *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 272-73 (D. Md. 2003).  On the other hand, "the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record."  *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994); *see Lehman v. Astrue*, 931 F. Supp. 2d 682, 693 (D. Md. 2013).  "Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded."  *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980).  However, although an ALJ has a duty to develop adequately the record on all relevant facts and issues before making a final decision, *Cook*, 783 F.2d at 1173, the standard for ordering consultative examinations is when "the evidence as a whole is insufficient to allow [the Commissioner] to make a determination or decision on [the] claim" or when there is an inconsistency in the evidence.  20 C.F.R. § 404.1519a(b).  In other words, the need for a consultative examination arises if, for example, "[t]he additional evidence needed is not contained in the records of [the claimant's] medical sources"; "[t]he evidence that may have been available from [the claimant's] treating or other medical sources cannot be obtained for reasons

beyond [the claimant's] control, such as death or noncooperation of a medical source"; "[h]ighly technical or specialized medical evidence that [the Commissioner needs] is not available from [the claimant's] treating or other medical sources"; or "[t]here is an indication of a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established." *Id.* § 404.1519a(b)(1)-(4).

A consultative examination was not warranted in this case because, as the Commissioner points out, "there was no evidentiary basis to trigger consideration of Plaintiff's mental condition in adjudicating his disability claim"; Plaintiff did not allege mental impairments, and the record did not indicate that he suffered from mental impairments (Def.'s Mem. Supp. Mot. Summ. J. 17, ECF No. 29-1). *See, e.g.*, *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) ("[A]n ALJ is not obliged to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." (internal quotation marks omitted)); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) ("The ALJ's duty to investigate . . . does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record. Because [the claimant] never raised the issue of mental impairment until this appeal, [the claimant] cannot say that he put his mental impairments before the ALJ." (footnote omitted)); *Smith v. Sullivan*, No. 89-1730, 1990 WL 12684, at *2 (4th Cir. Feb. 6, 1990) (per curiam) ("Additionally, we find that the ALJ had no duty to further develop the record regarding claimant's alleged 'nervous breakdown' since none of claimant's examining physicians suggested that he suffered from any mental or emotional impairment. For the foregoing reasons, the district court properly found that any alleged deficiencies in the development of the record were not prejudicial to the claimant and did not prevent him from receiving a fair hearing."). Accordingly, Plaintiff's contention in this regard is without merit.

Plaintiff also invites the Court to consider Exhibits 1 and 2 attached to his Motion for Summary Judgment.  Pl.'s Mem. Supp. Mot. Summ. J. 7-8, 25-26, ECF No. 20-1; *see* ECF Nos. 20-2, 20-3.  According to Plaintiff, Exhibit 1 is a photograph of him at a wedding reception on November 24, 2001, suffering from a migraine.  Exhibit 2 is a cognitive assessment dated August 15, 2012, that according to Plaintiff, "should at least be allowed to be used, in order to, support the argument that the Commissioner of Social Security failed to develop evidence with regards to mental functions."  Pl.'s Mem. Supp. Mot. Summ. J. 26, ECF No. 20-1.

"[I]n determining whether the ALJ's decision is supported by substantial evidence, a district court cannot consider evidence which was not presented to the ALJ."  *Smith*, 99 F.3d at 638 n.5.  In certain circumstances, however, the Court may remand a case under the sixth sentence of 42 U.S.C. § 405(g), for the Commissioner to consider additional evidence.  The sixth sentence of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g).  In other words, under the sixth sentence of § 405(g), "the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding."  *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S. Ct. 2157, 2163 (1991).  Thus, a claimant "must show that the evidence is new and material and must establish good cause for

failing to present the evidence earlier." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 n.3 (4th Cir. 1991) (en banc).  Evidence is new if it is not duplicative or cumulative, *id.* at 96, and it must relate to the period on or before the date of the ALJ's decision.  *See* 20 C.F.R. § 404.970(b).

Here, Exhibit 1 is not material because it would not have changed the administrative outcome.  Exhibit 2 also is not material because it does not relate to the time period that was before the Commissioner.  *See Brown v. Astrue*, Civil Action No. TMD 11-1063, 2013 WL 360259, at *3 (D. Md. Jan. 29, 2013).  Accordingly, the new evidence does not require remand.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards in this case.  Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**.  Defendant's Motion for Summary Judgment (ECF No. 29) is **GRANTED**.  The Commissioner's decision is **AFFIRMED**.  All other pending motions are **DENIED AS MOOT**. A separate order shall issue.

Date: July 29, 2014 _____/s/_____
                                            Thomas M. DiGirolamo
                                            United States Magistrate Judge